BOWMAN, Chief Judge.
Magna Bank, N.A., appeals the judgment of the District Court affirming the judgment of the Bankruptcy Court in favor of Hartford Underwriters Insurance Company. The sole question presented for review by the Court en banc is the threshold question of whether Hartford has statutory standing to surcharge Magna’s collateral under 11 U.S.C. § 506(c) (1994). We reverse.
I.
Magna[2] made various loans to Hen House Interstate, Inc. (Debtor), which owned and operated a number of restaurants, service stations, gift stores, and an outdoor advertising firm. To secure the loans, Magna took a security interest in essentially all of the Debtor’s real and personal property. On September 5, 1991, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri. When the Debtor filed its petition, it was indebted to Magna in the amount of approximately $4.1 million. The Debtor retained possession of its assets and continued operation of its businesses after commencing the Chapter 11 proceedings.
*721 The day after the Debtor filed its Chapter 11 petition, Magna agreed to lend the Debtor an additional $300,000 to help finance the Debtor’s post-petition reorganization efforts. The Bankruptcy Court approved the loan agreement in its final financing order and authorized the Debtor to use the proceeds of the post-petition loan and the cash collateral that was subject to Magna’s security interest to pay expenses set forth in an appended budget. The budget allowed for workers’ compensation expenses in the amount of approximately $8600 per month. Upon approval of the loan agreement, Magna disbursed the entire $300,000 of loan proceeds to the Debtor.
Despite the additional financing provided under the post-petition loan agreement, the Debtor’s attempts at reorganization failed. In January 1993, the Bankruptcy Court converted the Debtor’s Chapter 11 case into a Chapter 7 liquidation proceeding and appointed a trustee of the Chapter 7 estate.
During the Debtor’s attempted Chapter 11 reorganization, Hartford provided workers’ compensation insurance coverage to the Debtor. The terms of the insurance policy required the Debtor to pay a premium to Hartford each month. The Debtor made an initial premium deposit and a subsequent premium payment, but otherwise failed to pay the monthly premium required by the policy. The unpaid premiums amount to $51,871.40.
When the Chapter 11 reorganization failed and the Debtor’s case was converted to a Chapter 7 proceeding, Hartford brought an action pursuant to Bankruptcy Code § 503 seeking the allowance of its claim as an administrative expense and Bankruptcy Code § 506(c) seeking to recover the unpaid premiums by surcharging Magna’s collateral. The Bankruptcy Court, following the holding of a three-judge panel of our Court in United States, Internal Revenue Service v. Boatmen’s First National Bank, 5 F.3d 1157, 1159 (8th Cir.1993), that non-trustees have standing under § 506(c) to surcharge a secured creditor’s collateral, determined that Hartford had standing to seek recovery pursuant to § 506(c) and ordered the surcharge of Magna’s collateral. Magna appealed to the District Court claiming, inter alia, that § 506(c) did not accord Hartford standing to assert its claim. The District Court, also relying on Boatmen’s, affirmed the judgment of the Bankruptcy Court, and Magna appealed to this Court.
A three-judge panel of this Court affirmed the judgment of the District Court, holding, among other things, that Boatmen’s was controlling and that Hartford therefore had standing to seek recovery under § 506(c). But two members of the panel expressed their belief that Boatmen’s had been wrongly decided and should be reconsidered by the Court en banc. See Hartford Underwriters Ins. Co. v. Magna Bank, N.A. (In re Hen House Interstate, Inc.), 150 F.3d 868, 871 n. 4 (8th Cir.1998); id. at 873 (Hansen, J., concurring). We granted Magna’s suggestion for rehearing en banc on the issue of Hartford’s standing to seek recovery and vacated the panel opinion. We now overrule Boatmen’s to the extent it construes § 506(c) to empower a non-trustee to surcharge an allowed secured creditor’s collateral under that section and hold that Hartford, a non-trustee claimant, lacks standing to assert a § 506(c) claim.
II.
As the second reviewing court, we apply the same standard as that applied by the District Court; we review de novo the Bankruptcy Court’s determination of the single issue of law presented here. See Halverson v. Estate of Cameron (In re Mathiason), 16 F.3d 234, 235 (8th Cir.1994).
Initially, we note that Hartford asserts no claim against Magna or its collateral outside of the Hen House bankruptcy proceeding. The nature and extent of the potential liability of Magna, as an al *722 lowed secured creditor in that bankruptcy proceeding, is established by the Bankruptcy Code; more particularly, it is established for purposes of this case by § 506(c). Despite arguments made by Hartford asserting its § 506(c) standing to surcharge property securing Magna’s claim based on other provisions of the Bankruptcy Code, the fact is that § 506(c) is the only provision of the Code that directly addresses the issue of standing that is before us. Moreover, § 506(c) is the only provision of the Code that authorizes any party to a bankruptcy proceeding to recover from property securing the claim of an allowed secured creditor such as Magna. It would be extremely odd were Congress to have expanded the potential § 506(c) liability of allowed secured creditors by means of the other Code provisions put forward by Hartford, which in one way or another deal with the assertion of claims against the bankruptcy estate, as distinguished from claims against the property of allowed secured creditors.[3] We do not believe Congress intended to do any such thing and, therefore, we focus on § 506(c).
Section 506(c) clearly states, “The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.” 11 U.S.C. § 506(c) (1994) (emphasis added). The proper construction of any statute, the Bankruptcy Code included, begins with the language of the statute itself. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (construing Bankruptcy Code § 506(b) according to its plain language); Harmon v. United States, 101 F.3d 574, 583 (8th Cir.1996). The natural reading of § 506(c) entitles only the trustee to seek to surcharge property securing the claim of an allowed secured creditor under that section.[4] When the language of the Bank *723 ruptcy Code is clear and unambiguous, “our sole function ... is to enforce it according to its terms.” Rake v.. Wade, 508 U.S. 464, 471, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) (internal quotations and citations omitted) (interpreting “unqualified terms” of Bankruptcy Code § 506(b)); see also Patterson v. Shumate, 504 U.S. 753, 761, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) (stating clarity of § 541(e)(2) of Bankruptcy Code obviates need for inquiry beyond language of statute).
Hartford correctly points out that our conclusion here is not the consensus of the circuits that have considered the issue. A majority of those circuits has held that § 506(c) grants standing to non-trustees to pursue surcharge claims under that section. See Loudoun Leasing Dev. Co. v. Ford Motor Credit Co. (In re K & L Lakeland, Inc.), 128 F.3d 203, 206 (4th Cir.1997) (listing cases). But each of the circuits arriving at a conclusion contrary to the one we reach today has done so by circumventing the plain language of the statute and resting its determination instead upon policy considerations and equitable concerns. See In re Parque Forestal, Inc., 949 F.2d 504, 511-12 (1st Cir.1991) (“[The] courts of appeals which have considered the question have permitted re covery by third parties who equitably come to stand in the trustee’s shoes.”); Precision Steel Shearing, Inc. v. Fremont Fin. Corp. (In re Visual Indus., Inc.), 57 F.3d 321, 325 (3d Cir.1995) (“Although § 506(c) in terms refers only to recovery by the trustee, we ... have held that administrative claimants other than trustees have standing to recover under § 506(c), particularly when no other party has an economic incentive to seek recovery on the claimant’s behalf.”); New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Ass’n (In re Delta Towers, Ltd.), 924 F.2d 74, 76-77 (5th Cir.1991) (“Despite the seemingly unambiguous language, courts have allowed a [non-trustee] claimant to use § 506(c) .... ”); North County Jeep & Renault, Inc. v. General Elec. Capital Corp. (In re Palomar Truck Corp.), 951 F.2d 229, 232 (9th Cir.1991) (“No compelling policies are served by a restrictive reading of § 506(c) .... ”); cert. denied, 506 U.S. 821, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992). Policy considerations and equitable concerns, however, are impermissible bases for statutory interpretation when, as here, the language of the statute is clear and unambiguous. See BFP v. Resolution Trust Corp., 511 U.S. 531, 540, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (eschewing policy determinations for which the Bankruptcy Code gives no authority); McCuskey v. Central Trailer Servs., Ltd., 37 F.3d 1329, 1332 (8th Cir.1994) (declining trustee’s invitation to turn to bankruptcy policy considerations to guide interpretation of plain language of Bankruptcy Code § 546(a)(1)). “[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.” Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). We therefore respectfully disagree with those circuits holding that § 506(c) grants non-trustees standing to seek recovery under that section.
More persuasive is the determination of the Court of Appeals for the Fourth Circuit that “[t]he language of § 506(c) is clear and unambiguous. It grants only trustees the authority to seek recovery of postpetition costs and expenses from the collateral of a secured creditor.” Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.), 26 F.3d 481, 484 (4th Cir.1994); see also K & L Lakeland, 128 F.3d at 206-07.
Moreover, although we base our holding on the plain language of § 506(c), we note that the position espoused by Hartford would undermine the carefully crafted equality-of-distribution scheme fundamental to the operation of the Bankruptcy Code. See Begier v. IRS, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (“Equality of distribution among creditors is a central policy of the Bankruptcy *724 Code.”)- Entirely consistent with this scheme is § 506(c)’s grant of standing to a bankruptcy trustee to recover administrative expenses from the property securing the claim of an allowed secured creditor, the proceeds of which recovery become a portion of the bankruptcy estate and are distributed pro rata among creditors according to their relative priorities. In contrast, the result of the position urged by Hartford would be that the administrative expenses recovered by a non-trustee claimant would not be incorporated into the bankruptcy estate or otherwise contributed to appropriate distribution of the debt- or’s property among its creditors. Such a result would be incompatible with the fundamental equal distribution goals of the Bankruptcy Code. In addition, as the Fourth Circuit suggested in JKJ Chevrolet, to allow non-trustee claimants (other than the debtor) to bring § 506(c) claims is to invite “a flood of satellite litigation by those seeking to avoid a pro rata division of the estate.” 26 F.3d at 484 n. 6 (citing Boyd v. Dock’s Corner Assocs. (In re Great N. Forest Prods., Inc.), 135 B.R. 46, 69 (Bankr.W.D.Mich.1991)).
Finally, for the first time in this litigation Hartford asserts standing under Federal Rule of Bankruptcy Procedure 7071 to enforce the terms of the final financing order of the Bankruptcy Court. See Fed.R.Bankr.P. 7071 (incorporating Fed.R.Civ.P. 71) (“When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party....”). The final financing order directs the Debtor to pay expenses out of cash collateral covered by Magna’s security interest. See In re Hen House Interstate, Inc., No. 91-45623-293, para. 24, at 17 (Final Order of Bankruptcy Court). Rule 7071, however, was not the basis of the claim asserted by Hartford in its application to the Bankruptcy Court, in which Hartford sought to surcharge Magna’s collateral pursuant to Bankruptcy Code § 506(c). Having stated only a § 506(c) surcharge claim in its complaint and throughout this litigation, Hartford cannot now, after the case has come to the rehearing en banc stage in this Court, embark upon a different claim never pleaded to the Bankruptcy Court and assert that any standing to bring that claim is a ground for standing in the § 506(c) claim it actually brought. That Hartford might or might not have standing to bring a Rule 7071 claim is beside the point, for that is a new claim that cannot initially be brought forward at the appellate level.[5] We therefore do not reach the issue of Hartford’s standing to bring a Rule 7071 claim. Cf. Stupak-Thrall v. United States, 89 F.3d 1269, 1275 n. 4 (6th Cir.1996) (declining to hear issue urged for first time to panel in reply brief and reasserted in supplementary brief to court en banc; otherwise party raising argument on en banc rehearing would “be allowed to deprive the panel of the ability to address the issue first”), cert. denied, 519 U.S. 1090, 117 S.Ct. 764, 136 *725 L.Ed.2d 711 (1997); Anderson v. Beatrice Foods Co., 900 F.2d 388, 397 (1st Cir.) (order denying rehearing) (holding party who failed to assert argument in district court, and in supplemental briefing and oral argument before panel, “cannot be permitted to raise a new issue for the first time on petition for rehearing in the court of appeals”), cert. denied, 498 U.S. 891, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990).
The single issue for determination by this Court en banc remains the issue stated at the outset: whether Hartford as standing under § 506(c). We hold that § 506(c) permits only the trustee to proceed under that section. Hartford therefore lacks standing to surcharge Magna’s collateral under § 506(c).
III.
United States, Internal Revenue Service v. Boatmen’s First National Bank, 5 F.Sd 1157 (8th Cir.1993), which held that parties other than the trustee have standing to surcharge property securing the claim of an allowed secured creditor under § 506(c), is overruled. The decision of the District Court is reversed. The case is remanded to the District Court with instructions that the Bankruptcy Court be directed to vacate its judgment and dismiss Hartford’s § 506(c) claim for lack of standing.

. Magna is the successor in interest to Landmark Bank of Illinois. We refer to Magna herein in notwithstanding that some of the facts pertain to Landmark Bank prior to its acquisition by Magna, and notwithstanding that on October 9, 1998 Magna was absorbed by merger into Union Planters National Bank.

. The general rule is that administrative expenses cannot be charged against secured collateral and are chargeable against only the unsecured collateral of the estate pursuant to Bankruptcy Code § 503. See 1 U.S.C. § 503(a) (1994); Precision Steel Shearing, Inc. v. Fremont Fin. Corp. (In re Visual Indus., Inc.), 57 F.3d 321, 324 (3d Cir.1995); In re Swann, 149 B.R. 137, 143 (Bankr.D.S.D.1993). Therefore, Hartford, despite its argument to the contrary, may not seek to surcharge Magna’s collateral under § 503 and may look only to § 506(c) for that purpose. Hartford seeks standing under Bankruptcy Code § 1109(b) as well, see 11 U.S.C. § 1109(b) (1994) ("A party in interest, including ... a creditor ... may raise and may appear and be heard on any issue in a case under this chapter."), but § 1109(b) is not the correct avenue for recovery for the reason that § 1109(b) is inapplicable to the Chapter 7 proceeding which underlies this case. See In re Taylor & Assocs., L.P., 191 B.R. 374, 381-82 n. 5 (Bankr.E.D.Tenn.1996) ("Section[ ] 1109 ... [is] applicable exclusively to Chapter 11 cases and ha[s] no application to Chapter 7.”); cf. In re Polo Club Apartments Assocs. L.P., 150 B.R. 840, 856-57 (Bankr.N.D.Ga.1993) (noting that subchapter I of Bankruptcy Code Chapter 11 applies only in cases under Chapter 11, and does not apply to a case converted from Chapter 11 to Chapter 7).

. Hartford has made an issue of Bankruptcy Code § 1107(a), which provides that Chapter 11 debtors in possession shall, with some exceptions, have "all the rights ... and powers, and shall perform all the functions and duties,” of trustees. 11 U.S.C. § 1107(a) (1994). The express language of § 1107(a) therefore compels the unremarkable conclusion that Chapter 11 debtors in possession may do most of the things trustees may do. In this case, Hartford is neither a Chapter 11 debtor in possession nor a bankruptcy trustee.
Likewise, though Bankruptcy Code §§ 901, 902 and 1203 explicitly grant municipalities in Chapter 9 cases and family farmers in Chapter 12 cases some of the rights, powers, functions and duties of trustees serving in cases under Chapter 11, see 11 U.S.C. §§ 901(a), 902(5), 1203 (1994), this is not a Chapter 9 or 12 case and Hartford is not a municipality or a family farmer seeking to reorganize. That Congress chose to expressly grant the enumerated parties carefully circumscribed trustee status in limited circumstances demonstrates only that, had Congress intended a claimant such as Hartford to have § 506(c) standing in the present circumstance, it would have said so. Particularly appropriate here is the ancient canon stating that expressio unius est exclusio alterius.

. Moreover, the Rule 7071 claim is not within the scope of our order granting "rehearing en banc ... limited to the issue of standing.” Hartford Underwriters Ins. Co. v. Magna bank, N.A. (In re Hen House Interstate, Inc.), No. 97-3859EMSL (8th Cir. Sept. 22, 1998) (Order Granting Rehearing En Banc). Although our order (the purpose of which, after all, was to limit rehearing to a single issue, not to invite new claims) refers generally to "the issue of standing,” we could only have intended that phrase to mean the issue of § 506(c) standing. In its motion to file a supplemental brief after rehearing en banc had been granted, Hartford made no reference to Rule 7071. Instead, Hartford emphasized that ”[t]he question of standing under section 506(c) is one of great importance to administrative claimants such as Hartford, and the Court’s en banc resolution of this issue will affect many such claimants in innumerable bankruptcy cases.” Appellee’s Motion to File Supplemental Brief at 2-3 (Sept. 22, 1998). Likewise, Magna, in its suggestion for rehearing en banc, limited discussion to § 506(c). For these reasons, it strains credulity to think that our order granting rehearing en banc invited Hartford to assert a Rule 7071 claim at this late stage. We are thoroughly satisfied that our review is limited to the issue of Hartford's standing to bring a § 506(c) claim, the claim that Hartford in fact asserted.